## BESSE v. HECHT et al.

(District Court, E. D. New York. March 3, 1898.)

GENERAL AVERAGE—SERVICES FOR GENERAL BENEFIT.
    Where the managing owner makes a journey to reach his vessel in a port of distress, going in good faith, and induced in part by an honest feeling that his presence is necessary to protect the common interest, he will be entitled to compensation to the extent that his time was devoted to matters of common interest, and not to his own interest as owner.

This was a libel by William H. Besse against Isaac Hecht and others.

Wing, Shoudy & Putnam, for libelant.
Butler, Stillman & Hubbard, for respondents.

THOMAS, District Judge. The Belle of Oregon, of which the libelant owned $^{10}/_{64}$, Matthews, the captain, $^{7}/_{64}$, and sundry other

persons the remaining interest, bound from Oregon to New York, encountered a hurricane, and put into the port of San Francisco for refuge. Upon her arrival at that port it appeared that the ship had been damaged, in that certain of the sails, spars, main and mizzen topmast, main topgallant mast, main rail on starboard side, had been carried away, her poop opened and strained, and many articles had been washed from the deck and lost. It also appeared that the cargo had been exposed to injury from water in the hold. These facts were found by the surveyors selected by the master, on the day succeeding the ship's arrival, and such surveyors at the same time recommended that the ship be "taken to the Arctic Oil Works' wharf at once, and that the cargo be immediately discharged, to save further damage to the same." The ship was taken at once to the designated wharf, but the work of discharging the cargo did not begin until October 1st, for the following reasons: Before the ship reached San Francisco, intelligence of her disaster reached the libelant, then at New Bedford, Mass. On September 21st, the day of the ship's arrival at San Francisco, the libelant mailed to Capt. Matthews, at San Francisco, a letter showing that he had been advised of the mishap to the ship, and indicating a concern to protect the interests of the carrier, the interests of the cargo owners, and solicitude respecting the shipowners' duty and responsibility in the disposition of the cargo at the port of refuge. This letter directed that nothing be done with the cargo until further instructions, and intimated that the writer might go to San Francisco, in which case; as the letter stated, "We will try to do as nearly right as possible for all concerned." This letter was duly received by Capt. Matthews, and on September 21st he telegraphed Besse of his arrival at San Francisco, of certain injury to the ship, of the shifting of the cargo, and of the water in the hold, to which Besse on the same date replied, admonishing Capt. Matthews as to matters relating solely to the interests of the shipowners. September 23d, Capt. Besse, having been advised thereto by the president and counsel of the Boston Marine Insurance Company, underwriters on freight, telegraphed Matthews that he would start for San Francisco September 24th, and directed him to wait his arrival before calling a survey, and to put the ship in cheap wharfage. September 24th, Matthews telegraphed Besse, advising him of the preliminary survey, which recommended a discharge and separation of the cargo, and also stating that the underwriters urged immediate discharge, and suggested serious responsibility for unnecessary delay. To this Besse on the same day replied, protesting against further proceedings pending his arrival, stating that he was acting for the owners and underwriters; that "cargo cannot be discharged before some one becomes responsible for freight and expenses"; and, "if you proceed according to your last telegram, you will sacrifice the entire ship." On the same day Besse again telegraphed to Matthews that he was starting, and as follows: "You may permit landing of cargo, providing they will give valid bonds for guaranty on payment freight and all expenses incurred caused by landing cargo; otherwise keep

cargo in ship." On the same day Matthews again telegraphed Besse, stating his opinion that a large portion of the cargo was not materially damaged, and that some salmon, wool, and barley were probably damaged, and required immediate attention to save further loss; that he would store cargo in his name, and obtain possession, with $130,000 fire insurance on cargo. This telegram also inquired, "Who are to give bonds?" Besse left Boston for San Francisco, and arrived at that place on the evening of September 27th. Meanwhile a committee of the underwriters, learning of the delay caused by Besse's proposed coming and the injunction placed upon the execution of the recommendation of the surveyors, protested vigorously against the same. This committee represented insurance on the cargo to an amount approximating to the value thereof, which, in the general average adjustment, is placed at $133,518.69, while the value of the ship was adjusted at $7,270.68, and the freight at $4,154.30.

The telegrams of Capt. Matthews, an experienced navigator, and, after Besse, the holder of the largest individual interest in the ship, indicate his opinion that the discharge should not await the arrival of Besse; and, indeed, he so stated to the surveyors upon arrival. Capt. Matthews had the assistance and advice of Mr. Cottrell, an experienced employé of Knowles, the ship's agent at San Francisco, then absent; and it appears that Matthews did not deem requisite the aid of any other shipping house. It also appears that he had confidence in his own ability to meet the exigencies of the occasion, and had no thought that Besse's presence would be necessary. It does appear from his evidence, however, that he interpreted the survey to mean that the entire cargo should be discharged, and that he would have discharged the whole of the same, even after he should have discovered that it was in good condition. The surveyors and Besse are in collision as to the merit of the discovery, that the undamaged portion of the cargo should not be discharged. But the surveyors finally justified its retention. However, in the first instance, Capt. Besse's right to recover for services rendered for the common good, to the extent of the value thereof, does not depend upon events subsequent to his arrival, save as they may reflect upon the purpose and propriety of his going. The case of Hobson v. Lord, 92 U. S. 397–412, is concededly authority for the proposition that Besse's expenses and services incurred and rendered for the common benefit are properly allowable in general average, provided he went to render service for the general benefit. In that case the agent did not arrive before the ship sailed, but no fact indicated a journey with a purpose other than the conservation of the common interest. In the present instance, Besse, as the managing owner, may be regarded, for the purposes of the discussion, as the real owner. He stood in several relations to affairs: First. He was the owner of an injured ship that needed repairs before resuming its journey. Second. The injuries to the ship might or might not, according to their nature, be allowed in the general average. Third. The ship, if it would resume its relation of carrier to the cargo, suspended after the storm while going to and while in the port of refuge, must

be put in a seaworthy condition; and, unless this were done, it was the carrier's duty to make other provision for forwarding the cargo. Fourth. The shipowner, after the ship became disabled, and while in the port of refuge, became the bailee of the cargo, and a negligent discharge of the duties imposed by this relation would make him personally liable. This he recognizes in his letter of September 21st, wherein he states that the entire responsibility of the cargo "will rest upon us." Fifth. His duty as bailee justified, and, indeed, demanded, solicitude and necessary action for the just protection of the interests of the owners of the cargo, irrespective of any anticipation of personal liability that might result to him, if he or his agents failed to properly discharge the obligation of such bailee. The letter of September 21st, and the telegrams sent by Besse, indicate that the shipowners' interests are uppermost in his mind, and that the rehabiliment of the ship, escape from undue expense and liability, favorable participation in the general average, are to him matters of the greater solicitude. However, the letter of September 21st does show also an honest disposition for the just protection of all, and Capt. Besse's service at San Francisco was not only useful to all, but also there is no evidence that he did or omitted any act suggesting an unjust preference for his peculiar interests. If, then, the inquiry is, did Capt. Besse go to San Francisco solely to discharge his duty as bailee? it should be answered in the negative. But if the inquiry is, did Capt. Besse go to San Francisco in good faith, and induced in part by an honest feeling that his presence was necessary to protect the common interest of which he was bailee? the answer certainly should be in the affirmative. It is not important that Capt. Matthews might have done as well. The service of Capt. Besse was meritorious and acceptable. It results from the above that Capt. Besse went and rendered service in two capacities, viz. shipowner and bailee. His dual relation prompted his going, and undoubtedly the influences that incited the journey continued after his arrival. It could not be inferred that the intense interest for the protection of the shipowners, so obvious in his letter and telegrams, abated upon his arrival at San Francisco, and that he devoted his whole time to the common interests, and no time or labor to the specific and separate interests of the owners. If, then, the charge of $10 per day covers his whole time and service, and not the time and service devoted to matters of common interest, it was inaccurately adjusted in the general average. The evidence is not sufficient to advise the court in this regard. Therefore, unless the parties can agree, it should be referred to a commissioner to determine what portion of Capt. Besse's expenses and services are chargeable to the owners, and what to the respondent as an owner of cargo, and the same should be reported to the court.

The respondents specially object to the items of wages and provisions, $159.33, and wharfage, $108.50, said to be the amount of additional expense caused by the delay in discharging the cargo pending Capt. Besse's arrival. It is urged that the recommendation of the surveyors should have been immediately put into execution.

That was the opinion of Capt. Matthews and the committee of underwriters. It is not apparent from the result that anything was gained by the delay, nor that any injury arose therefrom save the additional expense of wharfage and expense of crew. If, in any case, it would be prudent to suspend the immediate discharge of a cargo, pursuant to the direction of the surveyors, until the arrival of a special agent, other facts than those here present should be given to justify it. It follows that the items for wages and provisions and wharfage as above should be disallowed.